NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
BRIAN C. ZHANG, SBN 342032
brian.zhang@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:    (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
**BALBOA CAPITAL CORPORATION**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>PANNU TRANSPORT, INC., a Virginia corporation; PARVINDER SINGH, an individual,<br><br>Defendants. | Case No. 8:23-cv-02407-JVS(JDEx)<br><br>[Assigned to the Hon. James V. Selna]<br><br>**BALBOA CAPITAL CORPORATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT PANNU TRANSPORT, INC.**<br><br>Complaint Filed:   December 19, 2023<br>Trial Date:          None |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 7, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10C of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth Street, Santa Ana, CA, 92701-4516, the Honorable James V. Selna presiding, plaintiff Ameris Bank, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendant Pannu Transport Inc., a Virginia corporation ("Pannu Transport" or "Defendant"), for a judgment amount of **$228,123.55**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendant in the total amount of $228,123.55, as Balboa has established (a) a sum certain due and owing by Defendant to Balboa pursuant to the Vehicle Financing Agreement and Equipment Financing Agreements No. 1 and No. 2 entered into by Defendant and Balboa; (b) that Defendant is not in military service and is neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//
//

2

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

DATED: September 4, 2024                    SALISIAN | LEE LLP

                                           By: _____
                                                 Jared T. Densen
                                                 Neal S. Salisian
                                                 Brian C. Zhang

                                           Attorneys for Plaintiff
                                           AMERIS BANK d/b/a BALBOA CAPITAL
                                           CORPORATION

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ........................................1

   A.    Vehicle Financing Agreement. .............................................1

   B.    Equipment Financing Agreement No. 1. ...............................2

   C.    Equipment Financing Agreement No. 2 ................................3

   D.    Attorneys' Fees and Costs ...................................................4

   E.    Default Judgment Motion ....................................................4

II.   LEGAL ARGUMENT .....................................................................5

   A.    Plaintiff Will Be Highly Prejudiced If Its Default
       Judgment Motion Is Denied. ................................................6

   B.    Plaintiff Has A High Likelihood Of Success On The Merits Of Its
       Substantive Claims And Its Complaint Is Sufficiently Pled.................8

      i.    Vehicle Financing Agreement……………………………...…9

      ii.   Equipment Financing Agreement No. 1……………..…………9

      iii.  Equipment Financing Agreement No. 2…………………….10

      iv.   All Agreements. ………………………………………...……11

   C.    The Sum Of Money At Stake Favors An Entry Of
       A Default Judgment Against Defendants. ...........................11

   D.    There Are No Material Facts That Are Reasonably In Dispute. .........13

   E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.......15

   F.    Policy Concerns Favor Default Judgment In This Matter. .................17

   G.    Plaintiff Has Proven Its Damages. ........................................18

III.  CONCLUSION ...........................................................................21

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Acoustics, Inc. v. Trepte Constr. Co.*,
  14 Cal.App.3d 887, 916 (1971)..................................................................8

*Draper v. Coombs*,
  792 F.2d 915, 924 (9th Cir. 1986)...........................................................15

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
  710 F.2d 170, 176 (4th Cir. 1983)...........................................................16

*Eitel v. McCool*,
  782 F.2d 1470, 1471-72 (9th Cir. 1986)....................................6, 11, 15

*Geddes v. United Fin. Group*,
  559 F.2d 557, 560 (9th Cir. 1977)........................................................8, 13

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
  725 F.Supp.2d 916, 921 (C.D. Cal. 2010) ...............................................13

*McKnight v. Webster*,
  499 F.Supp. 420, 424 (E.D. PA 1980) .....................................................16

*NewGen, LLC v. Safe Cig, LLC*,
  804 F.3d 606, 616 (9th Cir. 2016)....................................................15, 17

*O'Connor v. State of Nevada*,
  27 F.3d 357, 364 (9th Cir. 1994)..............................................................15

*Pena v. Seguros La Comercia, S.A.*,
  770 F.2d 811, 814 (9th Cir. 1985).............................................................17

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
  627 F. Supp. 2d 1083 (N.D. Cal. 2008) .............................................11, 17

*PepsiCo, Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). .......................................6, 8

*Reichert v. Gen. Ins. Co.*,
  68 Cal.2d 822, 830 (1968)...........................................................................8

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
  194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ............................................16

*Walters v. Statewide Concrete Barrier, Inc.*,
    No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)........11

**STATUTES**

Code of Civil Procedure § 1620 ....................................................................8

Code of Civil Procedure § 3300 ....................................................................8

Fed. R. Civ. P. 55..........................................................................................5

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2)........................................................8

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02407-JVS(JDEx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against defendant Pannu Transport Inc., a Virginia corporation ("Pannu Transport" or "Defendant")[1].

### A.   Vehicle Financing Agreement.

This action involves a claim for damages by Balboa against Defendant for the breach of the written Vehicle Financing Agreement No. 349852-000 (the "VFA"). [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into the VFA on or about April 25, 2021. [*See id*.]  Under the terms of the VFA, Balboa loaned to Pannu Transport the sum of $83,717.88, in order to finance equipment for its business ("Collateral No. 1").  [*See id*.]

Under the VFA, Pannu Transport was required to make sixty seventy-two (72) monthly payments of $1,667.91, beginning April 25, 2021.  [*See id*., ¶4, Exh. B.]  The last payment received by Balboa was credited toward the payment due for September 25, 2023.  [*See id*.]  Therefore, on October 25, 2023, Pannu Transport breached the VFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id*.]

At the time of Defendant's default, in addition to the late charges in the sum of $300.22, there remained forty-two (42) monthly payments, for a total of $70,352.45, due to Balboa.  [*See id*., ¶5.]  Defendant has since failed to make further payments.  [*See id.*]

---

[1] Balboa is not filing this Motion against defendant Parvinder Singh ("Singh") due to the filing of Chapter 7 Bankruptcy.  [See Dkt. 24.]  Balboa will dismiss Singh without prejudice pursuant to this Motion being granted.

Following Defendant's default, Balboa repossessed and sold Collateral No. 1, thereby crediting Defendant in the amount of $32,710.00. [*See id*., ¶6.] Thus, **$37,642.45** remains owed to Balboa. [*See id.*]

In addition, based on the amount due of $37,642.45, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from October 24, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Motion for Default Judgment ("Default Motion"), for a total interest amount of **$3,598.19**, accruing at a rate of **$10.31 per day**, until the entry of judgment. [*See id*., ¶7; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

## B.  <u>Equipment Financing Agreement No. 1.</u>

This action also involves a claim for damages by Balboa against Defendant for the breach of the written Equipment Financing Agreement No. 349852-001 ("EFA No. 1"). [*See* Ngo Decl., ¶9, <u>Exh. C</u>.]

Specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into EFA No. 1 on or about June 22, 2023. [*See id*.] Under the terms of EFA No. 1, Balboa loaned to Pannu Transport the sum of $78,350.96, in order to finance equipment for its business ("Collateral No. 2"). [*See id*.]

Under EFA No. 1, Pannu Transport was required to make forty-eight (48) monthly payments of $2,094.00, beginning August 21, 2023. [*See id*., ¶10, <u>Exh. D</u>.] The last payment received by Balboa was credited toward the payment due for September 21, 2023. [*See id*.] Therefore, on October 21, 2023, Pannu Transport breached EFA No. 1 by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id*.]

At the time of Defendant's default, in addition to the late charges in the sum of $251.28, there remained forty-six (46) monthly payments, for a total of $96,575.29, due to Balboa. [*See id*., ¶11.] Defendant has since failed to make further payments. [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 2, thereby crediting Defendant in the amount of $13,699.75.  [*See id.*, ¶12.]  Thus, **$82,875.54** remains owed to Balboa.  [*See id.*]

In addition, based on the amount due of $82,875.54, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from October 21, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$8,013.10**, accruing at a rate of **$22.70 per day**, until the entry of judgment.  [*See id.*, ¶13; *see also* Densen Decl., ¶¶8-9.]

**C.    Equipment Financing Agreement No. 2.**

This action also involves a claim for damages by Balboa against Defendant for the breach of the written Equipment Financing Agreement No. 349852-002 ("EFA No. 2").  [*See* Ngo Decl., ¶15, Exh. E.]

Specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into EFA No. 2 on or about November 4, 2023.  [*See id.*]  Under the terms of EFA No. 2, Balboa loaned to Pannu Transport the sum of $74,149.92, in order to finance equipment for its business ("Collateral No. 3").  [*See id.*]

Under EFA No. 2, Pannu Transport was required to make thirty (30) monthly payments of $2,918.00, beginning November 4, 2023.  [*See id.*, ¶16, Exh. F.]  On November 4, 2023, Pannu Transport breached EFA No. 2 by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id.*]

At the time of Defendant's default, in addition to the a titling fee charges in the sum of $150.00, there remained thirty (30) monthly payments, for a total of $87,690.01, due to Balboa.  [*See id.*, ¶17.]

Following Defendant's default, Defendants made four full monthly payments covering November 4, 2023, December 4, 2023, January 4, 2024, and February 4, 2024, Balboa thereby credited Defendant in the amount of $11,672.00.  [*See id.*,

¶18.] Thus, **$76,018.01** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments. [*See id.*]

In addition, based on the amount due of $76,018.01, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 4, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$7,057.98**, accruing at a rate of **$20.82 per day**, until the entry of judgment. [*See id.*, ¶19; *see also* Densen Decl., ¶¶11-12.]

### D.  <u>Attorneys' Fees and Costs</u>

Pursuant to Paragraph 20 of the VFA, EFA No. 1, and EFA No. 2, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Densen Decl., ¶¶7, 10, 13, <u>Exh. G</u>.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$2,858.54** for the VFA, **$4,915.02** for EFA No. 1, and **$4,640.72** for EFA No. 2. [*See id.*] Balboa has incurred **$504.00**, in recoverable costs - $405 for filing of the Complaint, and $99.00 for service upon Pannu Transport. [*See id.*]

### E.  <u>Default Judgment Motion</u>

Balboa's Default Motion satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b). Balboa filed its Complaint and case-initiating documents on December 19, 2023. [*See* Dkts. 1-4.] Defendant Pannu Transport was properly served on May 28, 2024, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkt. 20.] On June 26, 2024, Balboa filed its Request for Clerk to Enter Default against defendant Pannu Transport ("Default Entry Request"), and the Clerk entered the default against the defendants on June 28, 2024. [*See* Dkts. 22-23.]

Defendant Pannu Transport is a Virginia, and is not a minor, incompetent person, or a person in military service or otherwise exempted from default

judgment under the Servicemembers Civil Relief Act of 1940 (the "SCRA"). [*See* Densen Decl., ¶4.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000. [*See* Dkt. 1.] Plaintiff Balboa was and still operates as a California corporation, with its principal place of business in Orange County, California. [*See* Dkt. 1, ¶1; *see also* Densen Decl., ¶14.] Balboa is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank. [*See id*.]

Defendant Pannu Transport is a Virginia corporation, with their principal place of business in the State of Virginia. [*See id*., ¶15.] Thus, defendant Pannu Transport is a citizen of the State of Virginia. [*See id*., ¶15, <u>Exh. H</u>.] As such, there exists complete diversity amongst Plaintiff and Defendant. [*See id*., ¶16.]

As set forth below, a default judgment should be entered against each of the Defendants since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **<u>$228,123.55</u>**.

## II.    <u>LEGAL ARGUMENT</u>

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on Decmeber 19, 2023. [*See* Dkts. 1-4.] Defendant Pannu Transport was properly served on

May 28, 2024, pursuant to Federal Rule of Civil Procedure 4.  [See Dkt. 20.]  On

June 26, 2024, Balboa filed its Default Entry Request, and the Clerk entered the

default against the Defendant on June 28, 2024.  [See Dkts. 22-23.]

Defendant Pannu Transport is a Virginia corporation, and is not a minor,

incompetent person, or a person in military service or otherwise exempted from

default judgment under the SCRA.  [*See* Densen Decl., ¶4.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter

a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits
> of plaintiff's substantive claim; (3) the sufficiency of the
> complaint; (4) the sum of money at stake in the action; (5)
> the possibility of a dispute concerning material facts; (6)
> whether the default was due to excusable neglect; and (7)
> the strong policy underlying the Federal Rules of Civil
> Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not

prove that all seven factors weigh in its favor, as courts *may* consider these factors

in their discretion on whether to enter a default judgment.  *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel*

factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

**A.**     **<u>Plaintiff Will Be Highly Prejudiced If Its Default Judgment</u>**
**<u>Motion Is Denied.</u>**

A situation in which a plaintiff will be without any other recourse or recovery

should its default judgment application be denied qualifies as prejudice.  *See*

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort

due to Defendant's deliberate unwillingness to accept responsibility for its actions

or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to the VFA, financed Collateral No. 1

for Defendant, with Defendant agreeing to make seventy-two (72) monthly

payments of $1,667.91, for which forty-two (42) monthly payments, in addition to

the late charges in the sum of $300.22 for a total of $70,352.45, still remained due to Balboa at the time of Defendant's default.  [*See* Ngo Decl., ¶¶4-5, <u>Exh. B</u>.] Defendant has failed to make further payments.  [*See id.*] Following Defendant's default, Balboa repossessed and sold Collateral No. 1, thereby crediting Defendant in the amount of $32,710.00.  [*See id.*, ¶6.] Thus, **$37,642.45** remains owed to Balboa. [*See id.*]

Additionally, Balboa, pursuant to EFA No. 1, financed Collateral No. 2 for Defendant, with Defendant agreeing to make sixty forty-eight (48) monthly payments of $2,094.00, for which forty-six (46) monthly payments, in addition to the late charges in the sum of $251.28, for a total of $96,575.29, still remained due to Balboa at the time of Defendant's default.  [*See id*., ¶¶10-11, <u>Exh. D</u>.]  Defendant have since failed to make further payments.  [*See id.*] Following Defendant's default, Balboa repossessed and sold Collateral No. 2, thereby crediting Defendant in the amount of $13,699.75. [*See id.*, ¶12.]  Thus, **$82,875.54** remains owed to Balboa.  [*See id.*]

Additionally, Balboa, pursuant to EFA No. 2, financed Collateral No. 3 for Defendant, with Defendant agreeing to make thirty (30) monthly payments of $2,918.00, for which thirty (30) monthly payments, in addition to the a titling fee charge in the sum of $150.00, for a total of $87,690.01, still remained due to Balboa at the time of Defendant's default.  [*See id*., ¶¶16-17, <u>Exh. F</u>.]  Following Defendant's default, Defendants made four full monthly payments covering November 4, 2023, December 4, 2023, January 4, 2024, and February 4, 2024, Balboa thereby credited Defendant in the amount of $11,672.00. [*See id.*, ¶18.] Thus, **$76,018.01** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments.  [*See id.*]

Balboa has made demands for its monies from Defendant, all of which Defendant has failed to pay back.  [*See id*., ¶20.]

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02407-JVS(JDEx)

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendant have been unwilling to participate in, or otherwise acknowledge, the litigation.  Balboa's Motion for Default Judgment is its final option for an attempt at recovery, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims. *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendant will obtain a significant windfall of over $228,123.55.  Not only will the deliberate nonaction by Defendant and their continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced, especially with no other available recourse, should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendant to be granted by this Court.

**B.** **Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together.  *See PepsiCo*, 238 F.Supp.2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

### i.    Vehicle Financing Agreement.

Here, all elements are met.  Specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into the VFA, under which Balboa loaned to Pannu Transport the sum of $83,717.88, in order to finance Collateral No. 1 for its business.  [*See* Ngo Decl., ¶3, Exh. A.]

Under the VFA, Pannu Transport was required to make seventy-two (72) monthly payments of $1,667.91, beginning April 25, 2021.  [*See id*., ¶4.]  The last payment received by Balboa was credited toward the payment due for September 25, 2023.  [*See id*.]  Therefore, on October 25, 2023, Pannu Transport breached the VFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id*., Exh. B.]

At the time of Defendant's default, in addition to the late charges in the sum of $300.22, there remained forty-two (42) monthly payments, for a total of $70,352.45, due to Balboa.  [*See id*., ¶6.]  Defendants have since failed to make further payments.  [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 1, thereby crediting Defendant in the amount of $32,710.00.  [*See id.*, ¶6.] Thus, **$37,642.45** remains owed to Balboa. [*See id.*]

### ii.    Equipment Financing Agreement No. 1.

As to EFA No. 1, here, all elements are equally met.  Specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into EFA No. 1, under which Balboa loaned to Pannu Transport the sum of $78,350.96, in order to finance Collateral No. 2 for its business.  [*See* Ngo Decl., ¶9, Exh. C.]

Under EFA No. 1, Pannu Transport was required to make forty-eight (48) monthly payments of $2,094.00, beginning August 21, 2023.  [*See id*., ¶10.]  The last payment received by Balboa was credited toward the payment due for September 21, 2023.  [*See id*.]  Therefore, on October 21, 2023, Pannu Transport

breached EFA No. 1 by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id*.]

At the time of Defendant's default, in addition to the late charges in the sum of $251.28, there remained forty-six (46) monthly payments, for a total of $96,575.29, due to Balboa.  [*See id*., ¶11.]  Defendant has since failed to make further payments.  [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 2, thereby crediting Defendant in the amount of $13,699.75. [*See id.*, ¶12.]  Thus, **$82,875.54** remains owed to Balboa.  [*See id.*]

### iii.    Equipment Financing Agreement No. 2.

As to EFA No. 2, here, all elements are equally met.  Specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into EFA No. 2, under which Balboa loaned to Pannu Transport the sum of $74,149.92, in order to finance Collateral No. 3 for its business.  [*See* Ngo Decl., ¶15, Exh. E.]

Under EFA No. 2, Pannu Transport was required to make thirty (30) monthly payments of $2,918.00, beginning November 4, 2023.  [*See id*., ¶16.]  On November 4, 2023, Pannu Transport breached EFA No. 2 by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id*.]

At the time of Defendant's default, in addition to a titling fee in the sum of $150.00, there remained thirty (30) monthly payments, for a total of $87,690.01, due to Balboa.  [*See id*., ¶18.]

Following Defendant's default, Defendants made four full monthly payments covering November 4, 2023, December 4, 2023, January 4, 2024, and February 4, 2024, Balboa thereby credited Defendant in the amount of $11,672.00. [*See id.*, ¶18.]   Thus, **$76,018.01** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments.  [*See id.*]

### iv.    All Agreements.

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendant entered into the VFA, EFA No. 1, and EFA No. 2 (the "Agreements"); (2) Pannu Transport received the loan in order to finance Collateral No.1, No. 2, and No. 3 (the "Collaterals") for its business; (3) Defendant ceased making payments pursuant to the Agreements; and (4) Balboa has suffered and continues to suffer damages due to Defendant's continued nonpayment.  Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

### C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the VFA in the amount of **$37,642.45**; prejudgment interest from October 25, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion,

in the amount of **$3,598.19**, plus **$10.31 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$2,858.54**; and costs in the amount of **$504.00**. [*See* Densen Decl., ¶¶5-7, <u>Exh. G</u>.]  The damages sought are contractually-based and arise out of the clear terms and obligations of the VFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶7.]

Additionally, Balboa seeks compensatory damages pursuant to EFA No. 1 in the amount of **$82,875.54**; prejudgment interest from October 21, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, in the amount of **$8,013.10**, plus **$22.70 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$4,915.02**.  [*See* Densen Decl., ¶¶8-10.] The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 1; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶10.]

Additionally, Balboa seeks compensatory damages pursuant to EFA No. 2 in the amount of **$76,018.01**; prejudgment interest from November 4, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, in the amount of **$7,057.98**, plus **$20.82 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$4,640.72**.  [*See* Densen Decl., ¶¶11-13.]  The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 2; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶13.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment.  And it is also

substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D.    There Are No Material Facts That Are Reasonably In Dispute.

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into the VFA on or about April 25, 2021.  [*See* Ngo Decl., ¶3, Exh. A.]  Under the terms of the VFA, Balboa loaned to Pannu Transport the sum of $83,717.88, in order to finance Collateral No. 1 for its business.  [*See id.*]

Under the VFA, Pannu Transport was required to make seventy-two (72) monthly payments of $1,667.91, beginning April 25, 2021.  [*See id.*, ¶4, Exh. C.] The last payment received by Balboa was credited toward the payment due for September 25, 2023.  [*See id.*]  Therefore, on October 25, 2023, Pannu Transport breached the VFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id.*]

At the time of Defendant's default, in addition to the late charges in the sum of $300.22, there remained forty-two (42) monthly payments, for a total of

$70,352.45, due to Balboa.  [*See id.*, ¶6, <u>Exh. B</u>.]  Defendants have since failed to make further payments.  [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 1, thereby crediting Defendant in the amount of $32,710.00.  [*See id.*, ¶6.] Thus, **$37,642.45** remains owed to Balboa. [*See id.*]

And as for EFA No. 1, here, specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into EFA No. 1 on or about June 22, 2023.  [*See id.*, ¶9, <u>Exh. C</u>.]  Under the terms of EFA No. 1, Balboa loaned to Pannu Transport the sum of $78,350.96, in order to finance Collateral No. 2 for its business.  [*See id.*]

Under EFA No. 1, Pannu Transport was required to make forty-eight (48) monthly payments of $2,094.00, beginning August 21, 2023.  [*See id.*, ¶10, <u>Exh. D</u>.]  The last payment received by Balboa was partially credited toward the payment due for September 21, 2023.  [*See id.*]  Therefore, on October 21, 2023, Pannu Transport breached EFA No. 1 by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id.*]

At the time of Defendant's default, in addition to the late charges in the sum of $251.28, there remained forty-six (46) monthly payments, for a total of $96,575.29, due to Balboa.  [*See id.*, ¶11.]  Defendant has since failed to make further payments.  [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 2, thereby crediting Defendant in the amount of $13,699.75. [*See id.*, ¶12.]  Thus, **$82,875.54** remains owed to Balboa.  [*See id.*]

And as for EFA No. 2, here, specifically, Balboa, on the one hand, and Pannu Transport, on the other, entered into EFA No. 2 on or about November 4, 2023. [*See id.*, ¶15, <u>Exh. E</u>.]  Under the terms of EFA No. 2, Balboa loaned to Pannu Transport the sum of $74,149.92, in order to finance Collateral No. 3 for its business.  [*See id.*]

Under EFA No. 2, Pannu Transport was required to make thirty (30) monthly payments of $2,918.00, beginning November 4, 2023.  [*See id*., ¶16, <u>Exh. F</u>.]  On November 4, 2023, Pannu Transport breached EFA No. 2 by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id*.]

At the time of Defendant's default, in addition to the titling fee charges in the sum of $150.00, there remained thirty (30) monthly payments, for a total of $87,690.01, due to Balboa.  [*See id*., ¶17.]

Following Defendant's default, Defendants made four full monthly payments covering November 4, 2023, December 4, 2023, January 4, 2024, and February 4, 2024, Balboa thereby credited Defendant in the amount of $11,672.00. [*See id.*, ¶18.]  Thus, **$76,018.01** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments.  [*See id.*]

Defendant cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If anything, Defendant's refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.    <u>Defendant's Default Is Not The Result Of Excusable Neglect.</u>

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of*

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02407-JVS(JDEx)

*Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F.Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. Defendant was properly served via substituted service upon Gurvinder Pannu, as the registered agent for service of process for Pannu Transport, at 6712 Selbourne Ln, Gainesville, VA 20155, by leaving copies of the documents with Parvinder Signh, as the person most in charge at Pannu Tranport. [*See* Dkt. 20]

Further, Defendant was additionally served at the same address thereafter with the Default Entry Request. [*See* Dkt. 22.] Defendant has not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the

16

case where defendant's counsel contacts plaintiff's counsel after the entry of
default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at
616.

Here, Defendant has failed to acknowledge their wrongdoings and the
allegations they face, even in the slightest degree.  Instead, Defendant has blatantly
ignored Balboa's Complaint and all other papers filed thereafter.  Rather,
Defendant's course of action in response to Balboa's Complaint, or the apparent
lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F.    Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions
on the merits, cases should be decided on its merits only when *reasonably possible*.
*See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)
(emphasis added).  The policy preference to decide a case on its merits is not
dispositive, and thus, does not preclude a court from granting a default judgment.
*See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (defendants' failure to respond to
a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to
grant Balboa's request for a default judgment.  As detailed in II.E., *supra*,
Defendant has made it abundantly clear that they will not participate in this
litigation, or even acknowledge the instant action.  Defendant has deliberately
chosen a course of action to simply ignore Balboa and its claims against them,
including their own liability.  Thus, the Court's decision will not be based on the
merits of this case since there is no reasonable possibility at this point given
Defendant's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding
Defendant for their unwillingness to account for their liability to Balboa, and the
extremely prejudicial windfall they would receive should their deliberate silence
and stalling techniques be rewarded, at Balboa's expense.  *See* Section II.A., *supra*.

### G.    Plaintiff Has Proven Its Damages.

Under the VFA, Pannu Transport was required to make seventy-two (72) monthly payments of $1,667.91, beginning April 25, 2021.  [*See* Ngo Decl.., ¶4, Exh. B.]  The last payment received by Balboa was credited toward the payment due for September 25, 2023.  [*See id.*]  Therefore, on October 25, 2023, Pannu Transport breached the VFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id.*]

At the time of Defendant's default, in addition to the late charges in the sum of $300.22, there remained forty-two (42) monthly payments, for a total of $70,352.45, due to Balboa.  [*See id.*, ¶5.]  Defendants have since failed to make further payments.  [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 1, thereby crediting Defendant in the amount of $32,710.00.  [*See id.*, ¶6.] Thus, **$37,642.45** remains owed to Balboa. [*See id.*]

In addition, based on the amount due of $37,642.45, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from October 24, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$3,598.19**, accruing at a rate of **$10.31 per day**, until the entry of judgment.  [*See id.*, ¶7; *see also* Densen Decl., ¶¶5-6.]

Additionally, under EFA No. 1, Pannu Transport was required to make forty-eight (48) monthly payments of $2,094.00, beginning August 21, 2023.  [*See id.*, ¶10, Exh. D.]  The last payment received by Balboa was credited toward the payment due for September 21, 2023.  [*See id.*]  Therefore, on October 21, 2023, Pannu Transport breached EFA No. 1 by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id.*]

At the time of Defendant's default, in addition to the late charges in the sum of $251.28, there remained forty-six (46) monthly payments, for a total of

$96,575.29, due to Balboa.  [*See id.*, ¶11.]  Defendants have since failed to make further payments.  [*See id.*]

Following Defendant's default, Balboa repossessed and sold Collateral No. 2, thereby crediting Defendant in the amount of $13,699.75. [*See id.*, ¶12.]  Thus, **$82,875.54** remains owed to Balboa.  [*See id.*]

In addition, based on the amount due of $82,875.54, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from October 21, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$8,013.10**, accruing at a rate of **$22.70 per day**, until the entry of judgment.  [*See id.*, ¶13; *see also* Densen Decl., ¶¶8-9.]

Additionally, under EFA No. 2, Pannu Transport was required to make thirty (30) monthly payments of $2,918.00, beginning November 4, 2023.  [*See id.*, ¶16, Exh. F.]  On November 4, 2023, Pannu Transport breached EFA No. 2, by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id.*]

At the time of Defendant's' default, in addition to the titling fee charges in the sum of $150.00, there remained thirty (30) monthly payments, for a total of $87,690.01, due to Balboa.  [*See id.*, ¶17.]

Following Defendant's default, Defendants made four full monthly payments covering November 4, 2023, December 4, 2023, January 4, 2024, and February 4, 2024, Balboa thereby credited Defendant in the amount of $11,672.00. [*See id.*, ¶18.]   Thus, **$76,018.01** remains owed to Balboa. [*See id.*] Defendant has since failed to make further payments.  [*See id.*]

In addition, based on the amount due of $76,018.01, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 4, 2023, the date of breach, to October 7, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$7,057.98**, accruing at

a rate of **$20.82 per day**, until the entry of judgment.  [*See id*., ¶19; *see also* Densen
Decl., ¶¶11-12.]

      Pursuant to Paragraph 20 of the Agreements, Balboa is entitled to recover its
attorneys' fees and costs from Defendant.  [*See* Densen Decl., ¶¶7, 10, 13, <u>Exh.
H</u>.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the
sum of **$2,858.54** for the VFA, **$4,915.02** for EFA No. 1, and **$4,640.72** for EFA
No. 2.  [*See id*.]  Balboa has indeed incurred **$504.00** in recoverable costs.  [*See id*.]

      Altogether, this totals out to <u>**$228,123.55**</u> (as of October 7, 2024), calculated
as follows:

### <u>VFA:</u>

| | | |
|---|---|---|
| - | Amount owed: | $  37,642.45 |
| - | Prejudgment Interest: | $    3,598.19 |
| - | Attorneys' Fees: | $    2,858.54 |

### <u>EFA No. 1:</u>

| | | |
|---|---|---|
| - | Amount owed: | $  82,875.54 |
| - | Prejudgment Interest: | $    8,013.10 |
| - | Attorneys' Fees: | $    4,915.02 |

### <u>EFA No. 2:</u>

| | | |
|---|---|---|
| - | Amount owed: | $  76,018.01 |
| - | Prejudgment Interest: | $    7,057.98 |
| - | Attorneys' Fees: | $    4,640.72 |

### <u>Costs:</u>

| | | |
|---|---|---|
| - | Recoverable Costs: | $      504.00 |
| - | **Total** | **$228,123.55** |

//
//
//
//

III.    **CONCLUSION**

Based on Balboa's Complaint, Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendant, in the total amount of **$228,123.55**.

DATE: September 4, 2024                    SALISIAN | LEE LLP


By: _____
                                        Jared T. Densen
                                        Neal S. Salisian
                                        Brian C. Zhang

                                        Attorneys for Plaintiff
                                        AMERIS BANK d/b/a BALBOA CAPITAL
                                        CORPORATION